JONATHAN LORE and others *v.* JOHN GETSINGER and JOSEPH GETSINGER, and others.

The statute entitled "An act respecting the Court of Chancery," Rev. Stat. 921, providing that on the return "no goods" on an execution issued on a judgment at law, a bill may be filed for the discovery of any property, thing in action, &c. belonging to the debtor, or held in trust for him, made no change as to the rights of creditors against the fraudulent conveyance of property that may be reached by execution. This class of cases stand as they did before the statute.

Three creditors had obtained judgments in a Justices Court, against the same defendant, the judgments, with the costs thereon, amounting, together, to $103, and had issued executions thereon, which were all returned "no goods."

*Held,* that they might unite as complainants in a bill to set aside a fraudulent transfer of personal property that might be reached by execution.

The bill charged, also, that a certain conveyance by the defendant of real estate was fraudulent; and prayed that that, also, might be set aside. After the bill was filed, one of the creditors obtained a judgment against the defendant in a higher court, which was a lien on lands, (the judgments in the Justices' Court being no liens on lands.) An amendment of the bill to introduce the subsequent judgment was not permitted.

Facts on which the transfer of personal estate was declared void as against creditors.

On the 6th February, 1846, John Getsinger and Joseph Getsinger, who were partners in the manufacture of glass, executed to George B. Cooper and Charles B. Townsend a bill of sale of all the personal property which the said Getsingers held in partnership ; and of all the furniture in each of their houses ; and all the hogs, cows, calves, hay, rye, corn and other grain belonging to them, respectively ; and all the lumber, cut and in the log, on the landing or elsewhere, and all the glass manufactured or in progress of manufacture, and 701 boxes of glass then in the possession of Francis Lee and J. P. Bickley, and all and every article, of every kind, belonging to them jointly or individually, for the consideration in the said bill of sale expressed of $1 ; the bill of sale containing a covenant that the said Getsingers were the lawful owners of the said goods.

On the same day, the Getsingers, with their respective wives, executed to the said Cooper and Townsend a deed, in fee simple, for the consideration therein expressed of $1,250, for thirty-six

tracts of land, describing them, including a tract of about ten acres on a part of which the glass factory buildings and the said houses of the Getsingers and other houses stood, and containing altogether about 3713 acres of land ; which deed contained a covenant of warranty on the part of the grantors against them and their respective wives and all persons claiming under them or any of them ; and was duly recorded.

· On the same day, Cooper and Townsend, by deeds executed by them, conveyed to the children of John Getsinger, naming them, in fee, the house and lot where John Getsinger lived, and to the children of Joseph Getsinger, naming them, in fee, the house and lot where Joseph Getsinger lived. These two deeds were not recorded.

On the 19th February, 1846, Jonathan Lore recovered a judgment in a Justice's Court against the Getsingers, for $11 09 of debt, and $1 74 costs ; on which a *fi. fa.* was issued, and returned March 13, 1846, " no goods." Another execution from a Justice's Court, on a judgment entered Feb. 20, 1846, in favor of John Wallis, against the Getsingers, for $42 38 debt and costs was also returned, March 13, 1846, " no goods." Another execution from a Justice's Court, in favor of James Smallwood against the Getsingers, on a judgment entered Feb. 21, 1846, for $48 53 debt and costs, which judgment had been assigned to David Lore, was returned, March 13, 1846, " no goods."

On the 11th August, 1846, Lorenzo Ogden recovered a judgment in the Circuit Court of Cumberland, against the Getsingers, for $1,203 13, on which execution was issued, and returned " no goods." On the same day, Jonas Hess recovered a judgment in the said Circuit Court against the Getsingers, for $1429 19, on which an execution was issued and returned " no goods." And, on the 20th May, 1846, Jonathan Lore recovered a judgment, in the said Circuit Court, against the Getsingers, for $665 93, on which execution was issued, and returned " no goods."

On the 16th of April, 1846, Jonathan Lore, John Wallis and David Lore filed their bill, for themselves as judgment creditors of the Getsingers, and for all other judgment creditors of the Getsingers who should come in, &c., stating the foregoing facts ;

and stating, further, that at the time of the making of the said bill of sale, the said Getsingers were indebted to divers persons in large sums of money, and among others, to the said complainants; and that the said bill of sale was without any valuable consideration bona fide paid; and that the Getsingers have been permitted to retain the possession of the said property ever since the making of the said bill of sale: and charging that the same is fraudulent and void as against the complainants; and stating, in reference to the deed for the lands, that there was a secret understanding that the grantees, C. and T., should re-convey to the children of the Getsingers, respectively, the houses in which the said John and Joseph Getsinger, respectively, lived, and should pay to John Getsinger $300 a year, and to Joseph Getsinger $200 a year, as long as the glass works should be carried on.

That C. and T. sent an express, the same night the deed to them was executed, to Bridgeton, a distance of 16 miles, and had the said deed deposited with the Clerk of the County, for record before daylight the next morning; that the said two deeds to the children have not, as the complainants are informed, yet been recorded; that, although the said deed to C. and T. purports to have been made for the consideration of $1250 paid before the delivery thereof, yet the complainants are informed, believe and charge, that no money whatever, or if any, a mere nominal sum, was paid. They charge that the said deed was made for the purpose and with the intent to delay, defeat, hinder and defraud the creditors of the Getsingers, and is therefore fraudulent and void as against the complainants and the creditors of the Getsingers, or either of them. That the said two deeds made by C. and T. to the children of the said Getsingers, respectively, were made without any valuable consideration therefor paid by the said children or either of them; and were made at the same time with the said deed and bill of sale to C. and T.; and were a part of the same transaction, and part of a plan devised by the said J. and J. Getsinger and C. and T. to put the property of the Getsingers, or a considerable portion thereof, beyond the reach of the creditors of the Getsingers, and to enable them to keep possession of the said houses and lots and of the

furniture and other articles in the said houses, and to use, occupy and enjoy the same as if no such deed or bill of sale had been made. They charge, that the said two deeds made to the said children, respectively, were made with the intent and purpose to defraud, hinder and delay the creditors of the Getsingers, and are therefore fraudulent and void as against the complainants and all other creditors of the Getsingers.

The bill then states what the complainants charge to be the value of the real and personal property conveyed to C. and T., and the value of the two houses and lots conveyed to them by the children of the Getsingers; charging the real estate to be worth $14,000, subject only to an incumbrance of $11,745 23; and the personal estate to be worth $5,000 or $6,000; and the two houses conveyed by C. and T. to the children to be worth $1,000 each. That, at the time of the said conveyances, the aggregate amount of the indebtedness of the Getsingers was not less than $25,000; and that C. and T. knew, at the time, that the Getsingers were largely indebted, and more than they were able to pay.

That the Getsingers are Germans, and but little acquainted with the English language; very ignorant of our laws and of the proper mode of transacting legal business, and of the nature and effect of legal proceedings. And that the complainants are informed and believe that the said Getsingers were hurried and constrained, by various unfounded representations held out to them by Cooper and Townsend, or one of them, to execute the said conveyances, without giving them time to consult their friends whom they desired to consult, or take the opinion of counsel, or fully to understand the nature and effect of the conveyances they were required to sign. To show which, the complainants say, that John Getsinger asked Townsend to give him from Friday, the day on which the deeds bear date, until the Monday following, to consult his friend John G. Rosenbaum before he executed the said deeds; but that Townsend insisted that the deeds must be executed on the said Friday, and told the said Getsinger that if it was not done that day the Sheriff would sell their property the next day, though the Sheriff had not advertised the property, and Townsend well knew the Sheriff could

not sell the next day.   That the complainants are informed and believe that Townsend gave as another reason to the Getsingers why he could not delay the business until Monday, that he had four lawyers on expense, and could not wait; and that, notwithstanding the said John Getsinger was advised by his friend James Ward not to enter into any writings until he got legal advice as to the effect thereof, and that there was no necessity of hastening the sale, and notwithstanding the said Ward carried to the Getsingers a proposition from Joshua Brick and others that, if the Getsingers would make an assignment of their property for the benefit of all the creditors, the creditors would make to them a deed for the houses in which they lived, yet the Getsingers declined the proposition.

The bill then introduces statements that the complainants have reason to believe, and do believe, that the Getsingers have equitable interests, things in action, &c. of the value of $100 and more, which they have been unable to discover and reach by executions on their judgments; and seeks a disclosure from the Getsingers.

The bill prays a receiver, and that the Getsingers may be enjoined from collecting, receiving, selling or transferring any of their debts, goods, account books, notes, &c. &c. ; and from confessing any judgment for the purpose of giving any creditor a preference over the complainants ; and that the said bill of sale and deed to Cooper and Townsend may be declared void ; and also the two deeds from Cooper and T. to the children of the Getsingers, and that C. and T. may be injoined from selling, taking away, or disposing of any of the personal property mentioned in the bill of sale.

It appears that, at the date of the said deeds and bill of sale, the real estate was subject to a mortgage, dated August 16, 1845, given to Joshua Brick, Thos. Lee, Frances Lee and T. B. Bickley, to secure $11,755 23 in six and twelve months, with interest ; and that, at the same time an execution existed, which had been levied in November before on the personal property of the Getsingers at the time of the levy, issued on a judgment for $2,400, obtained by Lee and Bickley against the Getsingers, which, it was admitted in the argument, was for a part of the

money secured by the mortgage ; and that there were, at the same time, several executions in the hands of constables, which had been levied on personal property of the Getsingers, amounting in all to about $224.

The Getsingers and Cooper and Townsend put in their joint and several answer.

They admit the judgments, executions and returns thereon stated in the bill.    They say that the bill of sale was made for a valuable consideration bona fide paid and agreed to be paid by C. and T. to the Getsingers; that the articles therein mentioned, except 701 boxes of glass in the possession of Lee and Bickley, were, at the execution of the bill of sale, delivered to C. and T. ; and that the same, except some articles of household furniture of the Getsingers, of but small value, have ever since remained in the possession of C. and T., or have been consumed by them in the progress of their business ; and they deny that the said bill of sale was made with any view to injure, delay or defraud creditors, or that the complainants have in any way been injured thereby ; and they submit that the same was a valid, fair and *bona fide* transaction.

They admit the deed from the Getsingers to C. and T.    They say that the bill of sale and deed were made at the same time, and were one and the same transaction, and were made by the Getsingers and their wives, to convey to C. and T. their interest in certain glass works and tracts of land appurtenant thereto, and certain personal property principally connected therewith, in pursuance of a contract made by the said parties, fairly and deliberately, for a fair and *bona fide* consideration equal to the full value thereof, as it was then situated, and in the fair and ordinary transaction of business ; with no view to defeat, delay or injure the complainants or any other creditor of the Getsingers.

They say, that the true consideration paid and agreed to be paid for the said real and personal property was the following : the execution (before stated) in favor of Lee and Bickley, and which they paid on the 12th of February, 1846, amounting to $2,512 18; that they also agreed to pay, for and on behalf of

the Getsingers, at their request, $500 *bona fide* due from them to one Joseph Schmouse, $250 *bona fide* due from them to Lorenzo Ogden, $150 *bona fide* due from them to Richard Mitchell, and $100 *bona fide* due from them to Charles Bank, and several sums upon executions in the hands of constables, previously levied on the said personal property, supposed to amount to $250, and which afterwards proved to be $224 ; all which sums the said C. and T. have fully paid and satisfied ; thatthe real estate was subject to a mortgage (being the mortgage before mentioned) for $11,755 23, which money, or such part thereof as was justly due, the said C. and T. agreed and expected to pay.

That the wives of the Getsingers had not signed the said mortgage, and were entitled to a prospective right of dower, and were unwilling to join in executing the said deed without some reasonable equivalent ; and it was therefore agreed that, in consideration of their joining in the said conveyance, and as some compensation to them for their right of dower, the two houses mentioned in the bill should be conveyed to such persons as the wives should designate and request ; and at their request the same were accordingly conveyed to the children of each.

They deny that the said houses were worth anything like $1200 each ; but believe that $1200 would be a good price for the two. They say that the said houses were no more than a reasonable consideration to the wives for joining in the conveyance ; that the other property conveyed by them to C. and T., sold by deed conveying all the right of the wives, would bring considerably more, either at public or private sale, and was actually worth more than the whole property, including the said houses, would be worth or bring if conveyed by the husbands alone.  And the defendants C. and T. state, that they would not have given for the whole property, including the two houses, what they have given and agreed to give, if the wives had refused to join in the conveyance.

They say that the said deeds were not, nor was either of them, made for the purpose and with the intent to delay, hinder or defraud the creditors of the Getsingers, or either of them ; but that they were made in pursuance of a fair and *bona fide* contract, and for a good and adequate consideration ; and they in-

sist that the same are valid; and they deny that there was any intention or desire to put the property of the Getsingers, or any part thereof, beyond the reach of their creditors, or that there was any plan or intention so to do.

The defendants C. and T. for themselves say, it is true they sent up the deed to be recorded in the night, exercising in so doing, as they believe, only a reasonable precaution against any attempt they had reason to believe might be made by designing persons to injure and defraud them; and, as they submit, thereby doing nothing illegal, improper or suspicious; and they also caused the said bill of sale to be put on record, being willing that all their acts in the matter should be public.

The defendants deny that the real estate was worth $1400, and deny that the personal property included in the bill of sale was worth $5,000; nor do they believe that it was worth more than was given for it by C. and T. They say that the personal property was valued, previous to the sale, by persons appointed by the Sheriff, one of whom was a creditor of the Getsingers, at about $1500, including what is contained in the bill of sale, except some articles amounting in value to about $150, and except the 701 boxes of glass in the possession of Lee and Bickley, which are claimed by them, or by them and Joshua Brick and Thomas Lee, and have not come to the possession of C. and T., or to any one for their use, being of the value of about $1028.

That at the time of the said sale it was, and is still the belief of the defendants, that the real estate would not bring, at a public sale, more than the incumbrances on it; and had the works gone out of blast, there is every reason to believe that the said real estate would not pay the incumbrances. That property of that description is very precarious and uncertain in its value, and would be greatly depreciated by ceasing to be worked for any considerable time; and, as these defendants then believed and still believe, would be greatly lessened in value by any material reduction of the rates of duties levied by the U. S. on glass; the great probability of which reduction the defendants were well aware of when the said sale was made.

They deny that there was any understanding at the time of or previous to said conveyances and bill of sale, and as any part of

the consideration for making the same, that C. and T. should pay John Getsinger $300 a year, and Joseph Getsinger $200 a year as long as the glass works should be carried on.

These defendants C. and T. purchased the said property with the bona fide view of carrying on the said glass works for their own advantage and profit; and since said purchase have so carried them on, and expect to do so. There is not now, nor has there ever been, since the making of the said conveyance, any agreement or understanding, express or implied, that the Getsingers, or either of them, or any other person for their use and benefit, shall have any share of the profits, or any interest in the said property, or any right to the same in any contingency, except their right under the lease hereafter mentioned.

C. and T., who are not practical glass blowers, needing the services of the Getsingers, did agree with John Getsinger to pay him $300 a year, in quarterly payments, for his services as superintendent of the glass factory, at which rate they have paid him since their said purchase; and to pay Jos. Getsinger $200 a year, quarterly, for his services as master blower and pot maker, at which rate they have paid him since their said purchase; and they also made a lease to the sons of John and Jos. G. for two lots of meadow, at the annual value of not exceeding $50, for the use of the said John and Joseph, the proceeds of which they receive, in addition to the sum aforesaid; and which said sums and the proceeds of said meadow are no more than a reasonable consideration for the services actually rendered by the Getsingers to C. and T., and no more than are usually paid for similar services.

The defendants admit that, at the time of making said bill of sale and conveyance the Getsingers were largely indebted; and, although C. and T. had no particular knowledge of the said debts, they were informed that such was the case; and the fact also, was, as the defendants all believe, that the affairs of the Getsingers were so situated that there was no reasonable prospect of their being able to pay anything more than the incumbrances then on the property, had they not succeeded in effecting a sale to persons able and willing to carry them on. Had the whole personal property levied on been sold under the execu-

tions and dispersed, or had the Getsingers made an assignment, the works must have stopped; and in either case the property must have greatly depreciated, to the injury of the creditors. These defendants believed at the time the sale was made, and still believe, that the sale, for the price obtained and actually paid to the creditors of the Getsingers, was the best arrangement that could be made for the benefit of all concerned.

The defendants say it is true that the Getsingers are Germans and but little acquainted with the English language, and are not well acquainted with the laws of the country; but the defendants the Getsingers declare that, before executing the conveyance and bill of sale, they made themselves fully acquainted with the nature and effect thereof, and were at the time, and still are, entirely satisfied that they did what was best for themselves and best for their creditors.

The defendants say that the proposition to purchase the said works was first made by the Getsingers to C. and T., and that negotiation respecting the purchase was in progress a full week; and the Getsingers deliberated on the subject and consulted with their friends during that period until fully satisfied. The defendants deny that unfounded representations were made by C. and T., or either of them, to the Getsingers, or either of them, to induce them to execute the said conveyances. They say that the terms of the contract had been agreed upon on Friday, and C. and T. were desirous and urged that the business should be completed that day, if at all; and C. and T. say they were induced so to do because ample time had been spent in arranging the business, and further delay would occasion them additional expense and inconvenience, and because they were informed and believed and still believe that J. Brick, Thos. and F. Lee and Bickley were using all the means in their power to embarrass them and to break up the business of the glass works, and bring the Getsingers wholly under their power and control.

The defendants say they believe, and therefore state, that the complainants' bill was filed at the instigation of and in concert with said Brick, Lees and Bickley, who contribute, as the defendants are informed and believe, to the expenses of this suit, and are really parties thereto; and they believe, and therefore

state, that the whole difficulty has been produced by their interference and to serve their private purposes. The Getsingers depended much on them, for many years, for advice and aid; but it having come to the knowledge of the said Brick, Lees and Bickley that their business had not prospered, and that the Getsingers had met with very heavy losses, by fire and otherwise, Brick, and Bickley his son-in-law, and the said Thos. Lee, and Francis Lee his son, who had previously been much at variance and for a long time not in the habit of transacting business together, reconciled their difficulties, and, as the defendants believe and state, concocted together and unjustly and unlawfully combined to get the said glass works into their own hands, or to get the management of the business; and joined together, in pursuance of said design, to obtain from the Getsingers the said mortgage and judgment, and then suddenly refused to give them any further credit, or afford them any aid; but caused their executions to be levied, and were proceeding to enforce a sale; and when they found that their said design was likely to be defeated, and that the Getsingers were in a fair way to sell the works to C. and T., they combined with the complainants to embarrass and throw all the difficulties in the way of the defendants in their power.

The Getsingers say, that John Getsinger owns some land in Atlantic county, which is mortgaged to a creditor of the said Getsingers for its full value; and they say they have annexed to the answer a list of all their property, and debts due them which have been contracted within any reasonable time, and which are of any value, setting forth what they consider may perhaps be collected, and which they suppose are doubtful or desperate; and they say that, except what is contained in the said list, and except their earnings since the making of said conveyances, which they have from time to time expended in the support of themselves and their families, and except the lease before mentioned, they, or either of them, had not, at the time of the rendition of the judgment in the bill mentioned, possessed, owned or had, and do not now possess, own or have any property of any kind.

The Getsingers say they have always been and still are de-

13

sirous of paying all their debts, and have made every possible effort to do so, and have always intended to appropriate every cent they could collect of the debts due them, and all their property to the payment of their debts ; and that they have never concealed the same ; but are desirous now to collect what is due them, and pay the same to their creditors, and submit that they ought to be allowed to do so without further restraint or hindrance.

The answer submits, that the complainants have not brought themselves, by the facts stated in their bill, within the provisions of the act entitled " An act respecting the Court of Chancery," and are not entitled to the benefit thereof ; and they hope they shall have the same benefit of this defense as if they had demurred.

The case was heard on the pleadings and evidence.

*W. Halsted* for the complainants. He cited *Long on Sales,* 69, 70, 72, 282, 3 ; 1 *Halst. Rep.* 155 ; 1 *Cranch,* 309 ; 3 *Gilman's Rep.* 455, 463 ; *Story on Sales,* 437 ; 2 *Kent's Com.* 531, 2 ; 9 *John. Rep.* 337 ; 2 *Burr's Rep.* 328 ; 2 *Wharton,* 302 ; 6 *Ib.* 53 ; 3 *Coke's Rep.* 80 ; 2 *Scho. & Lef.* 492, 501 ; 2 *Paige,* 333 ; 3 *Gilman,* 523 ; 9 *Paige,* 595, 605 ; 5 *Ib.* 505 ; 1 *Edw.* 271, 451 ; *Mitf. on Pl.* 262 ; 12 *Ves.* 48 ; 8 *Wend.* 339 ; 4 *John. Ch.* 183 ; 5 *Ib.* 276 ; 1 *Hopk.* 112 ; 7 *Day,* 205, 496.

*L. Q. C. Elmer* and *P. D. Vroom* for the defendants. They cited 2 *Rev. Stat. of N. Y.,* 173, sec. 37 ; *Rev. Stat. of N. J.,* 921, 2 ; *Story's Eq. Pl.,* sec. 332, 3, 885, 6, 7, 8 ; 1 *Paige,* 200 ; 1 *Green's Ch.* 258 ; 4 *John. Ch.* 671 ; *Clark's Ch. Rep.* 299 ; 7 *Paige,* 583, 350, 637 ; 2 *Ib.* 637 ; *Story on Sales,* 447 to 457 ; 7 *Halst. Rep.* 285 ; 2 *South. Rep.* 738 ; 4 *Harr. Rep.* 166 ; 4 *Halst. Rep.* 135 ; 5 *Term. Rep.* 235 ; 1 *Saxt. Ch.* 341 ; 9 *Ves.* 246 ; 1 *Bro. Ch.* 175.

THE CHANCELLOR. It is objected in the answer, and the objection has been urged in argument, that this is a creditor's bill under our act entitled "An act respecting the Court of Chancery," Rev. Stat. 921 ; and that no execution of either of the complainants, nor all the executions of the several complainants together amount to $100, exclusive of costs ; and that therefore the bill cannot be sustained.

This act provides that whenever an execution issued on a judgment at law against the property of a defendant shall have been returned unsatisfied in whole or in part, leaving an amount or balance due exceeding $100 exclusive of costs, the party suing out such execution may file a bill in Chancery to compel the discovery of any property or thing in action belonging to the defendant in the judgment, and of any property, money, or thing in action, due to him or held in trust for him, except such property as is now reserved by law ; and to prevent the transfer of any such property, money, or thing in action, or the payment or delivery thereof to the defendant, except when such trust has been created by, or the fund so held in trust has proceeded from some person other than the debtor himself ; and that the court shall have power to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgment out of any personal property, money, or things in action belonging to the defendant, or held in trust for him, (with the exception above stated,) which shall be discovered by the proceedings in Chancery ; but if the personal property, money or thing in action which shall be discovered as aforesaid shall not amount to $100, no costs shall be recovered against the defendant.

The English Courts, after much discussion, established the doctrine that, to make a conveyance void as against creditors, it must be a conveyance of property which the creditor could take in execution; for that a conveyance of property not subject to execution cannot be injurious to creditors, because it would not withdraw any fund from their power which the law had not already withdrawn from it, and a conveyance which in no respect varied the rights of creditors could not be a fraud upon creditors. Under this doctrine, a debtor might hold, or transfer to another for his use, any amount of stock, choses in action, or other property not subject to execution, in defiance of his creditors. 1 *Story's Eq.*, sec. 367.

Chancellor Kent has very strongly and ably combatted this doctrine. *Ib.*, sec. 368, and note and authorities there cited.

The existence of such a doctrine in England, whether well founded or not, and the least apprehension that such a doctrine was maintainable here, certainly furnished sufficient ground for the

adoption of our statute. And it is plain from its language, that it was intended to displace, in this State, the English doctrine above mentioned, and to put creditors on the ground on which Chancellor Kent contended they ought to stand without the aid of any statutory provision. It has made no change in the law as to the rights of creditors against fraudulent conveyances of property that may be reached by execution. This class of cases stand as they did before the statute. This objection, therefore, cannot prevail.

This bill is filed by three creditors who have obtained judgments in a Justice's Court, on which executions have been issued, and returned " no goods," amounting, with the costs, to $103 74, for themselves and all other judgment creditors of the Getsingers who shall come in, &c., seeking to set aside a bill of sale transferring to Cooper and Townsend personal property of a tangible kind, on which an ex ecution at law might be levied, and also to set aside a deed to C. and T. of real estate, on the ground alleged, that the said bill of sale and deed are fraudulent and void as against creditors.

Protection of the right of creditors to payment out of the property of their debtors, against the disposition of their property with a view to defeat that right, by declaring such disposition void as against the creditors, is too obvious a policy and duty not to have been recognized from the earliest periods. And so careful are the courts of the rights of creditors, that the debtor cannot by transfer or conveyance put his property beyond their reach, unless such transfer or conveyance is made both upon good consideration and *bona fide ;* and even if the transfer or conveyance be made for a valuable and adequate consideration, yet, if it be made with intent to defraud creditors, it is void as against them. The indicia of fraud, the circumstances from which the presumption of an intention to defeat creditors will arise, must of course be clear and strong where a valuable and adequate consideration is paid.

Courts of equity afford their aid in relieving the creditor from frauds of this kind ; and transactions the fraudulent character of which might not be reached or declared by courts of law are often exposed by the nature of the proceedings in courts of equity.

Of this jurisdiction of courts of equity there can, at this day, be no doubt. The duty of the courts of New Jersey of exercising to the fullest extent, and with a scrupulous regard for the rights of creditors, their jurisdiction over this subject, is rendered more imperative by the recent legislation in this State exempting the person of the debtor from imprisonment for debt.

The complainants who filed this bill were creditors on judgments obtained before a Justice of the Peace. Their judgments are no liens on real estate. They issued executions against the personal estate of the defendants the Getsingers, which were returned "no goods." They are in position, then, to ask the aid of this court against a transfer of personal property of the Getsingers of a nature to be subject to execution, if such transfer is fraudulent and void as against them, unless the fact of their judgments being less than $100 each, or the fact that their three judgments together amount only to $103, including costs, prevents; or unless such judgment creditors cannot unite in filing a bill and the amount of either of the judgments is insufficient to justify the interposition of this court.

Without saying what amount of judgment and execution before a magistrate should be sufficient to invoke the aid of this court, I am of opinion that such creditors may unite, and that the amount of these three judgments together is sufficient to call for the exercise of the jurisdiction of this court, in reference to personal property of a nature to be subject to levy on execution, in the protection of their rights against a fraudulent transfer thereof. 8 *Wend.* 339.

The answer in this cause was filed Sept. 14, 1846. The replication was filed Nov. 3, 1846. On the 12th of May, 1846, Jonathan Lore, one of the complainants, recovered another judgment against the Getsingers, in the Circuit Court of Cumberland county, for $665 93, on which a *fi. fa.* was issued ; and the *fi. fa.* was returned "no goods," on the second Tuesday of August, 1846. An *alias fi. fa.* was subsequently issued on this judgment, tested the second Tuesday of August, 1846, returnable the second Tuesday of Nov., 1846, by virtue of which a levy was made on the 9th of October, 1846, on personal property of the Getsingers, consisting of household furniture, (mentioning the

articles,) and hay and grain, "together with all the moveable property in the possession of John Getsinger and Joseph Getsinger. The property levied upon under this *alias fi. fa.* was claimed by Cooper and Townsend, by notice in writing delivered to the Sheriff; and a jury was summoned, according to the provisions of the statute in that respect, to try the right of the claimants to the said property. The complainant in the said judgment did not indemnify the Sheriff against the demand of the claimants; and the right of said claimants was tried by a jury, and the property levied upon was found by the jury to be in the claimants.

On the 11th of August, 1846, Jonas Hess recovered a judgment in the Circuit Court of Cumberland, against the Getsingers, for $1,429 19, on which an execution was issued, tested the second Tuesday of August, 1846, returnable the second Tuesday of November, 1846, by virtue of which the Sheriff levied on the same property levied on by virtue of the *alias fi. fa.* issued on the said judgment of Jonathan Lore, with the same general clause added; and Cooper and Townsend having put in a claim to the property, the claim was tried before a jury, and the property levied on was found to be in the claimants. The claim was tried on the 31st of October, 1846; Hess omitting to indemnify the Sheriff.

On the 11th of August, 1847, Lorenzo Ogden recovered a judgment in the Circuit Court of Cumberland, against the Getsingers, for $1,203 13, on which a *fi. fa.* recorded October 29, 1846, was issued, returnable the second Tuesday of November, 1846, which was returned "no goods nor lands."

On the 23d of June, 1846, an order was taken on the part of the complainants, that the complainants be at liberty to amend their bill, by making Lorenzo Ogden and Jonathan Hess parties complainants, and by setting forth their respective judgments, executions and returns; and further to amend the bill by setting out the judgment recovered by the complainant Jonathan Lore since the filing of the bill, and the execution issued thereon returnable to the August term, 1846, and the return thereof "no goods." It was agreed on the argument of the cause, that this

order should be considered as having been subject to the decision of the court as to the propriety thereof.

When the bill was filed, no one of the complainants had any lien on the real estate, their judgments being obtained before Justices of the Peace. When the bill was filed, therefore, the case made by it was not such as to give the court any ground on which to entertain the cause so far as it sought to affect real estate. The bill could not properly pray any action of the court in reference to the real estate, or any relief in respect thereof. Such a bill cannot become the basis of a proceeding in reference to real estate on the ground that judgments were subsequently recovered which were liens on the real estate, and by permitting an amendment of the bill introducing the subsequent judgments affecting real estate.

It will not be necessary, therefore, and not proper, perhaps, to say anything as to the deed for the real estate from the Getsingers to C. and T., or the character of it as fraudulent or otherwise.

As to the bill of sale of the personal estate, I am of opinion that it cannot be sustained as against creditors.

From the evidence as to the value of the real property, and the fact that it was mortgaged, the wives not joining in the mortgages, for within $1250 of the consideration named in the deed, and within $1,000 of what one of the papers says was to be actually paid, it appears to me that the real estate, if, in view of other circumstances which I will not now mention, the deed therefor can be sustained, was very amply worth all the defendants have agreed to pay to or for the Getsingers.

The consideration for the whole personal property nominal in the bill of sale, was, I think, nominal in fact. The considerations, growing out of the testimony, leading to the conclusion that this bill of sale ought not to be supported as against creditors are too numerous to be stated at length. The court, in my judgment, cannot sustain such a transaction without an utter disregard of the right of creditors.

The consideration for the deed for the real estate expressed in the deed is $1250. This is to be considered as the consideration subject to the mortgage. By a writing under the hands and

seals of C. and T., bearing even date with the deed, thus, " for and in consideration of certain *real estate* this day conveyed to us" (them) by the Getsingers and their wives, " do hereby promise, covenant and agree" to and with the Getsingers, " to pay Joseph Schmouse       -       -       -       -       $500

Three notes in the Cumberland Bank, one in favor of
    Lorenzo Ogden, to fall due March 1, 1846, for    -    250
One in favor of Richard Mitchell, to fall due April 3,
    1846, for    -    -    -    -    -    150
And one in favor of Jonas Hess, to fall due April 10,
    1846, for    -    -    -    -    -    100

                                    $1,000

On the same day the Getsingers give a receipt to C. and T., by which they say they have received of them $1,000, viz : (their assumptions to pay the above mentioned claims, setting them out,) in full consideration of the deed of same date made by them to C. and T. of certain real estate. This paper then states that they have received the further sum of $1, in full for the consideration of certain personal property specified in a bill of sale of that date made by said Getsingers to C. and T.

Then another writing under the hands and seals of C. and T. appears, purporting to be signed the same day, as follows :

        " LIABILITIES OF THE MESSRS. GETSINGER.

The bond and mortgage to Brick, the Lees
    and Bickley,    -    -    -    $11,755 23
Interest thereon,    -    -    -    420 00
Lee and Bickley's judgment and execution,    2,433 43
Interest and Sheriff's costs,
Constable's executions, about    -    -    $250
Schmouse's claim,    -    -    -    -    500
Three notes in Bank, (being the notes
    specified in the two preceding writings,)    500
                              —— 1,250 00
(These three last items amounting to $1250,
    the consideration expressed in the deed for
    the real estate.)
                Footed    -    -    $15,858 66

Then follows : " In consideration of certain real estate convey-ed to us (by the Getsingers and wives) by deed bearing even date herewith, and in consideration of a bill of sale of certain per-sonal property of like date, we promise and agree to pay off the above claims, or so much thereof as shall be honestly due and owing thereon; we believe said judgment and execution to be covered by the mortgage ; and to indemnify and protect the said Getsingers and their property from any and every suit, claim and demand whatsoever founded on any of the claims above set forth."

It proves that the belief of C. and T. that the said judgment was for a part of the debt secured by the mortgage was correct.

When the judgment was paid, therefore, it paid so much of the debt secured by the mortgage on the real estate which they bought subject to the mortgage. It can form, then, no part of the consideration for the personal property.

Schmouse's claim and the three notes in Bank are expressly stated in the assumption of C. and T., and in the re-ceipt of the Getsingers, to be in consideration of the real estate ; and therefore can be no consideration for the personal estate.

There is nothing left, then, for a consideration for the bill of sale but the constable's executions, supposed to be $250 ; they proved to be $224; and the consideration called for in the deed of the real estate is large enough to pay these in addition to Schmouse's claim and the three notes, it being $1250 ; and the bill of sale is actually made for the consideration expressed of one dollar.

The transfer of the personal estate cannot be permitted to stand on the idea of its being a consideration for which C. and T. conveyed a part of the real estate to the children of the Get-singers to induce the wives of the Getsingers to sign the deed for the real estate. Perhaps it might be permitted to C. and T. to make a reasonable compensation to the wives to induce them to sign the deed ; but certainly the husbands could not be permit-ted to give C. and T. all their personal estate as a consideration for C. and T.'s conveying to the children a part of the real es-tate to induce the wives to sign the deed for the real estate.

In reference to the personal estate, the most they can in any

shape be considered as having given for it is $224.   I am unwilling to give the sanction of this court to a transaction so novel and extraordinary, so suspicious in its character, and of such dangerous tendency as a precedent, as the transaction in reference to the personal property in this case.

It is unnecessary to inquire as to the effect of the verdicts of the juries before stated, inasmuch as there is sufficient of other personal property to satisfy the judgments existing at the time of filing the bill and the executions thereon issued and levied.

The bill of sale of the personal property will be declared void as against the complainants.

Decree accordingly.